IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STANLEY OHLER, SR., HR-0655, )
    Petitioner, )
     )
    v. ) 2:12-cv-212
     )
COURT OF COMMON PLEAS, et al., )
    Respondents. )

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Stanley Ohler, Sr. (Docket No.4), for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Stanley Ohler, Sr., and inmate at the State Correctional Institution at Albion has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.

Ohler is presently serving a six to twelve year sentence imposed following his conviction by a jury of involuntary deviate sexual intercourse, statutory sexual assault and aggravated indecent assault at No. CP-26-CR-1649-2007 in the Court of Common Pleas of Fayette County, Pennsylvania. This sentence was imposed on June 3, 2008.[1]

    An appeal was taken to the Superior Court in which the issues presented were:

1. Whether the charge of involuntary deviate sexual intercourse should be reversed because the Commonwealth failed to establish the requisite elements thereof?

2. Whether the charge of aggravated indecent assault should be reversed because the Commonwealth failed to establish the requisite elements?[2]

---

[1] See: Petition at ¶¶1-6.
[2] See: Exhibit 25 to the answer at p.4.

1

On March 3, 2009 the Superior Court affirmed the judgment of sentence.[3] Leave to appeal to the Pennsylvania Supreme Court was not sought.[4]

On September 8, 2009, Ohler filed a post-conviction petition.[5] On May 27, 2010, post-conviction relief was denied.[6] An appeal was taken to the Superior Court in which the questions presented were:

   A. The PCRA court's ruling is not supported by the record.

   1. The defendant retained private counsel, Attorney James Sheets, to represent him at the trial in this matter and was *denied* the right to have his privately retained counsel represent him by the trial court, specifically Judge Conrad Capuzzi, causing the appellant to be represented by an unprepared public defender which amounted to ineffectiveness of counsel with unparalleled and unprecedented prejudice to the appellant and violated both his United States Article VI and Pennsylvania Constitutional Article I §9 rights [Note: *Private counsel's wife was delivering their baby – a most excusable reason for the court to grant a continuance*].

   2. The ineffective assistance of unprepared counsel so under-mined the truth determining process in this case that no reliable adjudication could have possibly been made due to being forced into trial unprepared and without the opportunity to even meet with the appellant; specifically:

      a. Ineffective counsel for failure to file pre-trial motions … to exclude improper DNA evidence; and
      b. Ineffective counsel for failure to file pre-trial motion to exclude an illegal search warrant to take DNA evidence as it lacked probable cause;
      c. Ineffective assistance of trial counsel as said trial counsel was unable to prepare, no alibi witnesses were called nor interviewed on the appellant's behalf severely prejudicing him at the trial;
      d. Trial counsel was ineffective due to his inability to prepare which caused him to be unable to cross-examine ... witnesses on critical issues at trial which would have destroyed their credibility had counsel been prepared;
      e. Trial counsel failed to cross-examine Commonwealth witnesses due to his lack of knowledge and familiarity with the case as he was forced to try a case without time to prepare;

---

[3] See: Exhibit 12 to the answer.
[4] The petitioner states in ¶9(g) that leave to appeal to the Supreme Court was sought. However, he cites to the petition for leave to appeal from the denial of post-conviction relief and not from the affirmance of his direct appeal. The Docket Sheet of the Superior Court at No.1069 WDA 2008 (regarding the direct appeal) does not contain any indication that leave to appeal to the Supreme Court was sought.
[5] See: Exhibit 31 to the answer at p.12.
[6] See: Exhibit 11 to the answer.

f. Trial counsel failed to complete discovery in a proper manner to prepare for trial and discovery produced by the Commonwealth was incomplete at the time of trial;
  g. Trial counsel was ineffective at trial as the appellant had a prior trial and his DNA evidence *proved his innocence* on the charges of rape, the same charges for which the Commonwealth charged him again which so undermined the truth determining process that no reliable adjudication could be made by a jury as trial counsel was unprepared and unknowledgeable of these critical facts.[7]

On June 16, 2011, the denial of post-conviction relief was affirmed.[8] Leave to appeal to the Supreme Court was sought raising essentially these same issues, and the petition was denied on November 22, 2011.[9]

In the instant petition executed on February 16, 2012, Ohler contends he is entitled to relief on the following grounds:

1. Ineffective assistance of trial counsel:
   (1) Trial counsel was ineffective for failing to file an omnibus pretrial motion to exclude DNA evidence taken from the defendant on August 29, 2007.
   (2) Trial counsel was ineffective for failing to file pretrial motion to exclude the search warrant issued in order to take DNA from the defendant;
   (3) Trial counsel was ineffective for failing to cross-exam witnesses on behalf of his client.
   (4) Trial counsel was ineffective for failing to cross-exam witnesses of the state.

2. Sufficiency of evidence supporting the conviction:
   (1) The victim could not identify the defendant from the police line-up.
   (2) The victim testified that the person had a gun or a knife, then she said that it was a sharp metal object. Therefore, the victim does not know what was used.
   (3) The victim stated that the person ejaculated down her leg. Chris Arrotti of the state police crime lab testified that the swab from the leg was negative for semen.
   (4) The victim testified that they drove towards a Dairy Queen on state route 119. There isn't a Dairy Queen on 119 and hasn't been for about 30 years.

3. Right of private counsel:
   (1) The defendant hired a private counsel to represent him at the jury trial (James P. Sheets). The day before trial his counsel's wife had a baby

---

[7] See: Exhibit 30 to the answer at p.6.
[8] See: Exhibit 29 to the answer.
[9] See: Exhibits 34 and 27 to the answer.

and because of that emergency, the private counsel could not attend the trial. Public defender Thomas W. Shaffer requested a continuance in from of Conrad Capuzzi. The Honorable Conrad Capuzzi denied the continuance. [10]

The background to the prosecution and procedural history of the case is set forth in the June 16, 2011 Memorandum of the Superior Court:

> At approximately 10:00 p.m. on November 8, 2002, then fourteen-year-old Mary Beth G. left her home after arguing with her father and started to walk toward her grandfather's home. A man, whom Mary Beth G. identified at trial as Appellant, drove past her in a white two-door car with a black strip down the side.
>
> Appellant slowed his vehicle as he passed Mary Beth G., drove around the block, returned to the victim's location, stopped next to her, asked for directions, and then queried as to whether she wanted a ride. After Mary Beth G. responded negatively, Appellant "grabbed [her] and started pushing [her] in the car." N.T. Trial, 3/5/08 at 31. When the victim started to scream, Appellant placed a sharp metal object against her neck and demanded that she be quiet. After forcing Mary Beth G. into his car, Appellant drove her to a secluded location. Appellant had the girl perform fellatio on him, had vaginal intercourse twice with her, and sodomized her. The victim was compliant with Appellant's demands because Appellant displayed the unidentified sharp object.
>
> Appellant then drove Mary Beth G. back toward her home and allowed her to leave. As she exited the car, Appellant threatened to harm her sister if she informed anyone about the crimes. The victim returned home, refused to speak to her father, and told her sister and then her uncle about what had transpired. Her uncle took her to a local hospital, where a rape test was performed. Blood and semen were recovered from the victim's vagina. The blood was from the victim, and while DNA testing of the semen was performed, the DNA did not match that of anyone known to police.
>
> The case was dormant until 2006, when Appellant became a suspect after he was accused of sexual assault in a different case and based upon his physical similarities to the description of the suspect given to police by Mary Beth G. A search warrant was obtained for a sample of Appellant's blood, which was secured while Appellant was in jail, and Appellant's DNA matched that of the sperm found in the victim's vagina. At trial, the Commonwealth established that in November 2002, Appellant and his wife used a white two-door vehicle that had a dark stripe on its sides. Appellant was twenty-eight years old on November 8, 2002.[11]

It is provided in 28 U.S.C. §2254(b) that:

---

[10] See: Petition at ¶12.
[11] See; Exhibit 29 to the answer at pp.1-3.

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court

5

> identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010).

The respondent does not argue that the petitioner failed to exhaust his state court remedies on the issues he seeks to raise here and for this reason they appear to be properly before this Court.

The petitioner's first argument is that trial counsel was ineffective. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive

6

and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

Petitioner's first two arguments in support of his claim are that counsel was ineffective for failing to file an omnibus pretrial motion to exclude DNA evidence secured from the defendant on August 29, 2007. At the post-conviction hearing, petitioner testified that he was unaware of his right to file an omnibus pretrial motion seeking to suppress the DNA evidence and that his DNA was already in the state system (TT.1/28/2010, pp.10,12).[12] At the PCRA hearing defense counsel testified that he had no reason to be suspect of the DNA testing procedure and that he thoroughly cross-examined the testifying serologist and still was unable to arrive at any basis for challenging the testing (TT.1/28/2010 p.36); that the DNA evidence was a match and "it would only be 3.4 quintillion of a chance it wasn't [petitioner's]" (TT.1.28.2010, p.48), and that it was standard practice in the office of the chief public defender to examine all preliminary notes to determine whether or not a basis existed for filing a pretrial omnibus motion (TT.1/28/2010 p.49). Thus, it is apparent from the record that no basis existed for challenging the DNA evidence nor does the petitioner point to any such basis other than making a bald assertion that a challenge should have been raised. Since counsel cannot be deemed to have been ineffective for failing to raise meritless claims, these allegations do not provide a basis for relief. Real v. Shannon, 600 F.3d 302 (3d Cir.2010).

The petitioner's next two arguments concerning ineffective assistance of counsel arise from his claim that counsel was ineffective for failing to properly cross-examine witnesses. As raised in his post-conviction petition these issues arose from the petitioner's claim that his attorney should have called character witnesses to testify in his behalf and for failing to thoroughly cross-examine his former wife, Wendy Jean Ohler. Following the post-conviction hearing the court wrote:

> Petitioner stated that he wanted Carol Boord, Carrie Moore. William Leighty, and Edward Boord called as character witnesses, giving the following offers as to what each witness would have testified.[TT/1/28/2010 pp.21-22]. Carol Boord, the mother of Petitioner, would have testified that Petitioner's ex-wife wanted him

---

[12] The hearing held on January 28, 2010 is Exhibit 3 to the answer.

in jail… Carrie Moore would have testified that Petitioner had no driver's license, that she drove Petitioner during the time frame of the incident, that Petitioner's ex-wife threatened to put him back in jail, and that he never tried anything with their daughters " … William Leighty would have testified that petitioner "never tried anything with his wife" and that Petitioner's ex-wife threatened to put him back in jail… Edward Boord, the stepfather of Petitioner, would have testified about the car owned by Petitioner… From the offer, certainly, these witnesses cannot be termed "character witnesses." [13]

At the post-conviction hearing trial counsel testified that had he called these witnesses to testify, the door would have been opened to introduce evidence of the petitioner's prior sexual offense charges.[14] As a matter of what obviously was sound trial strategy, counsel cannot be deemed to have been ineffective. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

Additionally, petitioner contends that counsel was ineffective for failing to adequate cross-examine prosecution witnesses. At trial, petitioner's ex-wife was called as a prosecution witness for the very limited purpose of identifying the vehicle she and her former husband owned at the time of the incident. No other information was solicited from her (TT.3/5/2008, Exhibit 1 to the answer at p.58). While the petitioner fails to set forth any factual bases for these allegations, in its post-conviction opinion, the trial court wrote that the petitioner claimed that counsel was ineffective for failing to effectively cross-examine his former wife who testified as to the description of the vehicle owner by her and the petitioner in November, 2002.[15] Specifically, the court wrote:

> At Petitioner's criminal jury trial, Wendy Jean Ohler was called by the Commonwealth to identify the vehicle owned by her and Petitioner in November, 2002 … First, as to whether the automobile Petitioner drove had a gear shift on the console, at the PCRA hearing no evidence was presented that Wendy Jean Ohler would have knowledge of this fact. Second, as to whether Petitioner ever owned sweatpants, Wendy Jean Ohler's knowledge of whether Petitioner "ever" owned sweatpants could not have been established, is not relevant, and was outside the scope of her direct testimony. Third, as to whether Petitioner was able to perform sexual intercourse with Wendy Jean Ohler more than one time per night, was not relevant as to the issue of whether Petitioner was able to perform multiple sexual acts with the victim in this case. Fourth, as to how many cars she and Petitioner owned is not relevant and, Ms. Ohler identified a vehicle which matched the description of the vehicle used in Petitioner's sexual assault. Fifth, as to what type of radio stations Petitioner listened to is not relevant, since Wendy

---

[13] See: Exhibit 11 at pp.11-12.
[14] See: Exhibit 3 at p.38.
[15] See: Exhibi5t 11 at p.13.

8

> Jean Ohler could have no personal knowledge as to the radio station Petitioner listened to on the night in question. Lastly, as to whether Wendy Jean Ohler ever threatened to "do whatever it took to put [Petitioner] behind bars," is not relevant since Ms. Ohler's testimony in this criminal trial was limited solely to her identification of the vehicle which she shared with Petitioner…
>
> Petitioner's next allegation of ineffective assistance is the failure of trial counsel to cross-examine the alleged victim in regard to how Petitioner knew she had a sister, how tall Petitioner was, and whether the radio was playing in Petitioner's car.
>
> Here, other than a bare assertion that trial counsel failed to act, Petitioner offered no testimony or evidence during the PCRA hearing regarding these allegations of ineffectiveness, or how he was prejudice…
>
> Petitioner's next allegations of ineffective assistance alleges that trial counsel was ineffective for failing to cross-examine a Connellsville Police Department Sergeant with regard to whether he investigated another suspect identified by the victim through a photo lineup… Here, the evidence was sufficient to convict Petitioner, independent of the photograph lineup…[16]

The factual findings of the trial court are entitled to a presumption of correctness, 28 U.S.C. §2254 (e)(1). Clearly, these factual determinations are supported by the record. Additionally, as demonstrated above, the witness was called to testify for a very limited purpose, and cross-examination beyond the scope of that testimony would have been improper. Accordingly, counsel cannot be deemed to have been ineffective for not engaging in improper cross-examination. For the reasons set forth above, petitioner's claim that counsel was ineffective cannot support a claim for relief.

The petitioner's next contention is that the evidence was insufficient to support the conviction. When presented with such a claim, a federal habeas court must determine whether or not in light of the evidence presented a rational fact finder could determine guilty beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).

In the instant case, the petitioner was convicted of involuntary deviate sexual intercourse, 18 Pa.C.S.A.§3123(a)(7); statutory sexual assault, 18 Pa.C.S.C.§3122.1 and aggravated indecent assault, 18 Pa.C.S.A.§3125(a)(8). The latter statutory provisions provide:

> 18 Pa.C.S.A.§3123(a)(7): A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant who is less than

---

[16] Id. pp.13-15.

9

16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A §3122.1: A person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A.§3125(a)(8): A person who engages in penetration, however, slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic, or law enforcement procedures commits aggravated indecent assault, a felony of the second degree, if the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

As noted above, at the time of the offense, November 2002, the victim was 14 years old and the petitioner was 28 years old and the testimony demonstrates that he forced her to engage in oral, vaginal and anal sex. While the petitioner here seeks to raise challenges to the credibility of the victim, the fact still remains that her testimony, if believed by the jury, would support the convictions here challenged. Accordingly, these claims do no provide a basis for relief.

The petitioner's final contention is that he was denied the right to proceed to trial with counsel of his own choosing. In this regard, the Superior Court wrote:

> Appellant first claims that he was improperly denied a continuance which was requested to allow his newly-acquired private counsel to represent him. The following facts are pertinent. On the day that Appellant's trial was scheduled to begin, March 5, 2008, Appellant's counsel of record was Thomas Shaffer, Esquire, who was appointed and had represented Appellant in a prior case. At 10:10 a.m., Mr. Shaffer appeared before the motions judge rather than the judge presiding over Appellant's trial. At that time, the only attorney of record for Appellant was Mr. Shaffer. The motions judge asked if Mr. Shafer was prepared for trial, and he answered that he could represent Appellant. The private attorney was not present when the continuance was requested.
>
> The record establishes that after the motion was presented, one minute later, at 10:11 a.m. on March 5, 2008, James P. Sheets, Esquires, a private lawyer, filed a praecipe for appearance. Mr. Sheets did not indicate that he delivered a copy of the praecipe to any judge. Appellant's trial began four minutes later, at 10:15 a.m. that day… Mr. Sheets did not appear for trial and did not file a motion for a continuance. Mr. Shaffer, who did not review the request for a continuance, was present to represent Appellant, the jury had been chosen, and the matter proceeded to trial …

Herein, when the motion for continuance was denied, Appellant's private counsel was not Appellant's attorney of record. Mr. Sheets did not file a written motion to continue this matter and also failed to present himself before the motion's judge, who ascertained that Mr. Shaffer, Appellant's counsel of record, could proceed to represent Appellant at the trial scheduled to begin within minutes. Under these circumstances, we find no palpable and manifest abuse of discretion in the motion judge's refusal to grant a continuance…

In the present case, Appellant levels no specific allegation of prejudice flowing from the denial of the continuance rather, the existence of prejudice is derivative of and dependent upon the merits of his secondary position raised on appeal, which is that appointed trial counsel was ineffective because he was unprepared for trial.[17]

The Sixth Amendment provides in part, that "in all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." The right to be represented by counsel of one's own choosing is paramount ("Where the right to be assisted by counsel of one's choice is wrongly denied … it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." United States v. Gonzalex-Lopez, 548 U.S. 140, 148 (2006)). Thus, the question is not whether trial counsel was effective but rather whether the petitioner's right to counsel of his own choosing was improperly abridged.

In Morris v. Slappy, 461 U.S. 1, 11-12 (1983) the Court wrote:

Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment, right to counsel…Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)…

In the face of the unequivocal and uncontradicted statement by a responsible officer of the court that he was fully prepared and "ready" for trial, it was far from an abuse of discretion to deny a continuance.

---

[17] See: Exhibit 29 at pp.5-7.

See also: United States v. Gaya, 647 F.3d 634 (7th Cir. 2011), cert.denied 132 S.Ct. 1046 (2012)("broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel"(citing cases).

      In the instant case, the record demonstrates that after the matter had been set for trial, and the prospective jurors assembled, appointed counsel for the petitioner requested a judge, other than the trial judge, to postpone jury selection since the petitioner anticipated securing alternate counsel. The latter had not filed an appearance at the time jury selection commenced and prior counsel indicated that he was prepared to proceed. Under such circumstances, denying a continuance cannot be determined to have been an abuse of discretion. For this reason, the petitioner's final claim likewise does not provide a basis for relief.

      Thus, the petitioner has failed to demonstrate that his conviction and sentence were secured in a manner that was contrary to clearly established federal law or involved and unreasonable application of clearly established federal law as required by 28 U.S.C. §2254(d)(1) and he is not entitled to relief here. Accordingly, it is recommended that the petition of Stanley Ohler, Sr. for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

      Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal.

Respectfully submitted,
s/ Robert C. Mitchell

Filed: May 2, 2012                United States Magistrate Judge